United States District Court
Southern District of Texas
**ENTERED**
October 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ENEX INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-00163 |
| | § | |
| PRIME 3 GROUP, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiff's Motion for Turnover Relief. *See* Dkt. 90. I have authority to issue this Memorandum and Recommendation pursuant to 28 U.S.C. § 636(b)(3). Having reviewed the motion, the responsive briefing, and the applicable law, I conclude that Plaintiff's Motion for Turnover Relief should be **GRANTED**.

## BACKGROUND

This dispute dates back to 2013 when a Virginia limited liability company, Prime 3 Group, LLC ("P3"), reached out to a Texas corporation, Enex International, Inc. ("Enex"), to acquire a basic engineering design package for one of its clients. Ultimately, this business relationship soured, and the parties sued each other in 2017 for breach of contract.

On May 13, 2019, the Court entered an Agreed Final Judgment against Prime 3 for $1.1 million with an interest rate of 2.43 percent per annum. Prime 3 has yet to make a single payment on the Agreed Final Judgment. The full amount thus remains due and owing.

Enex now requests an order requiring P3 to turn over its tangible property and its rights to intangible property to the United States Marshals. Enex seeks to have this property sold at a judicial auction, with the proceeds applied toward satisfying the Agreed Final Judgment. P3 argues that Enex's request for turnover relief is inappropriate for two reasons. P3 first argues that most of its assets are in China and may be exempt from turnover under Chinese law. P3 next argues that Enex's request for turnover relief is "absurdly draconian" in scope and should be more narrowly tailored. Dkt. 91 at 8.

## THE TEXAS TURNOVER STATUTE

Parties seeking to enforce or execute a judgment may institute supplementary proceedings under Federal Rule of Civil Procedure 69(a). Those proceedings "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." FED. R. CIV. P. 69(a)(1). The parties have pointed to no federal statute that might apply in this case, so the Texas turnover statute must guide my analysis. *See Dynamic Sports Nutrition, Inc. v. Roberts*, No. H-08-1929, 2009 WL 10711815, at *7 (S.D. Tex. July 14, 2009).

As explained by the Fifth Circuit, the Texas turnover statute is a "procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006). The Texas turnover statute provides that a judgment creditor "is entitled to aid from a court . . . through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property . . . that is not exempt from attachment, execution, or

2

seizure for the satisfaction of liabilities." *See* TEX. CIV. PRAC. & REM. CODE § 31.002(a). The debtor bears the burden of proving that the assets are exempt from the turnover order. *See Pillitteri v. Brown*, 165 S.W.3d 715, 722–23 (Tex. App.—Dallas 2004, no pet.).

A judgment creditor need only trace assets to a judgment debtor before a "presumption arises that the judgment debtor possesses the assets subject to turnover and the burden shifts to the judgment debtor to account for the assets." *Dynamic Sports Nutrition*, 2009 WL 10711815, at *8. Even property located outside the state of Texas is subject to a turnover order. *See Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (real property located in Mexico); *Reeves v. FSLIC*, 732 S.W.2d 380, 381 (Tex. App.—Dallas 1987, no writ) (real property located in Portugal).

## ANALYSIS

**A. WHICH JURISDICTION'S LAWS APPLY TO DETERMINE WHETHER PROPERTY IS EXEMPT FROM A TURNOVER ORDER?**

As a preliminary matter, the parties dispute which jurisdiction's exemption laws apply. Enex argues that Virginia's exemption laws apply because P3 is a limited liability company formed under Virginia law. P3 argues that China's exemption laws apply because "virtually all of the assets which P3 owns are located in China." Dkt. 91 at 2. There is also a third possibility: Texas exemption laws could apply because Enex is a Texas corporation with its principal place of business in Galveston County, Texas.

"A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). I will, therefore, apply Texas choice-of-law rules. Texas follows

3

the Restatement (Second) of Conflict of Laws. *See Bergman v. Bergman*, 888 S.W.2d 580, 585 (Tex. App.—El Paso 1994, no writ). Section 132 of the Restatement provides:

> The local law of the forum determines what property of a debtor within the state is exempt from execution unless another state, by reason of such circumstances as the domicil of the creditor and the debtor within its territory, has the dominant interest in the question of exemption. In that event, the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § (1971).

The text of section 132, therefore, "creates a presumption that the local law, here the law of Texas, determines what property is exempt." *Bergman*, 888 S.W.2d at 585. This presumption in favor of Texas law "can be overcome by a showing that a second state has a dominant interest in the application of its exemption laws." *Id.* A second state might have a dominant interest where both parties to the case reside in that second state, or where "both parties have substantial relationships with a second state." *See Dynamic Sports Nutrition*, 2009 WL 10711815, at *8 (quoting *Bergman*, 888 S.W.2d. at 585).

Whether Texas's exemption laws or Virginia's exemption laws apply is immaterial because neither state recognizes property exemptions for business organizations. *See* TEX. PROP. CODE § 42.001(a) (noting that personal property is exempt if provided for a family or owned by a single adult); *Holland v. Alker*, No. 01-05-00666-CV, 2006 WL 1041785, at *4 (Tex. App.—Houston [1st Dist.] Apr. 20, 2006, pet. denied) (finding that property owned by professional corporation was not exempt under Texas law and therefore subject to a valid turnover order); VA. CODE ANN. §§ 34-4, 34-26 (limiting exemptions to "householders," a defined term meaning any resident of Virginia).

P3 reads *Dynamic Sports Nutrition* as standing for the proposition that a second jurisdiction has a dominant interest when the debtor's property is located within that jurisdiction. Specifically, P3 waves a banner quoting Chief Judge Lee Rosenthal's statement that "[u]sually, the state where the property is located will have the dominant interest in determining whether the property is exempt." *Dynamic Sports Nutrition*, 2009 WL 10711815, at *8 (internal quotation marks and citation omitted). However, this is far from a statement of binding precedential law that applies in *all* circumstances. It is difficult to see how such a rule would apply in situations where the judgment debtor has property strewn across the country or around the globe. Texas courts have routinely ordered parties to turn over property located in foreign jurisdictions. *See Reeves v. Fed. Sav. & Loan Ins. Corp.*, 732 S.W.2d 380, 381 (Tex. App.—Dallas 1987, no writ) ("It is clear that Texas law permits a court to compel a person, over whom it has jurisdiction, to turn over realty located outside the State of Texas."). In *Dynamic Sports Nutrition*, the judgment debtor resided in New Jersey and had property there. The application of New Jersey's exemption laws thus made perfect sense in that case. Here, there is not one central location which predominates. P3 is incorporated in Virginia, with its principal place of business, registered office, and registered agent also located in Virginia. P3 does business in Texas with Texas residents and has some property located in China. Given the legal presumption in favor of local law, P3 has failed to demonstrate why China has a stronger interest in applying its exemption laws.

Even if I did conclude that China's exemption laws should control here, P3 fails to furnish any information that sheds light on what exemptions Chinese law would provide to

an American limited liability company. Instead, P3 takes the position that "Chinese law is sketchy, skeletal, and replete with ambiguity." Dkt. 93 at 9 (internal quotation marks and citation omitted). P3 acknowledges that "what exemptions [Chinese law] might supply to P3 in these circumstances is obscure," Dkt. 93 at 10, and then refers me to a law review article which merely states that Chinese law provides "certain exemptions, most of which cover basic personal items." *Id.* 9–10 (citing A. Yuan, *Enforcing and Collecting Money Judgments in China from a U.S. Judgment Creditor's Perspective*, 36 GEO. WASH. INT'L L. REV. 757, 765 (2004)). That's it. Nothing more. What are the exemptions provided by Chinese law? Do they apply to American limited liability companies? Because P3 has failed to provide me any evidence whatsoever concerning the substance of Chinese law, I am left to guess about what exemptions might hypothetically apply in this case. "The party relying on foreign law has the burden of proof. It must establish precisely what that law is and how it is interpreted. . . . Generally [expert] affidavits are the minimal formal requirements." *Application of Chase Manhattan Bank*, 191 F. Supp. 206, 209 (S.D.N.Y. 1961). *See also G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018) ("[A] party relying on foreign law has an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law."). Even if I wanted to apply Chinese law, P3 has completely failed to meet its burden of proving the content of Chinese law.

**B.    ENEX'S REQUESTED RELIEF IS REASONABLE**

Enex seeks a turnover order requiring P3 to turn over its tangible property and its rights to intangible property to the United States Marshals. Enex contends that the

6

following property, none of which is subject to ordinary process and execution, should be included:

    (a) any cash, savings accounts, checking accounts or other demand deposit accounts, securities, bonds, certificates of deposit, contents of safe deposit boxes or savings bonds;

    (b) any contractual right to payment from any third party, foreign or domestic, for goods or services rendered or royalties;

    (c) any funds in retainer accounts of its law firms, accountants or other professional services providers;

    (d) any rights to distributions from any trust, insurance policy, royalty agreement, license agreement, revenue sharing agreement;

    (e) any rights to distributions from any business entity owned, in whole or in part, by the principals of Prime 3 (including Richard S. Marten or Joshua Levy);

    (f) computers, hard drives, cloud storage accounts or other devices holding or storing electronic information owned by Prime 3, including all data residing thereon;

    (g) patents, trademarks, copyrights, trade secrets or confidential information owned by Prime 3;

    (h) business records, whether in hard copy or electronically stored;

    (i) websites owned by Prime 3, and order Prime 3 to execute the documents to transfer to Enex the ownership of any website domains or Uniform Resource Locator ("URL") numbers in which Prime 3 has an ownership interest;

    (j) vehicles, furniture, fixtures or equipment;

    (k) inventory, accounts receivable, promissory notes or other negotiable instruments;

    (l) stamp, coin, precious metals, antiques, baseball cards, comic book collections or collections of similar items;

    (m) leases, leasehold estates or any real estate owned by Prime 3 or in which Prime 3 has an interest; or

(n) any other tangible or intangible property.

Dkt. 90 at 6–7.

In conclusory fashion, P3 asserts that Enex's proposed turnover order is "sweeping and excessive in its scope." Dkt. 91 at 7. But P3 does not dispute that it has possession or control over the assets Enex seeks. P3 also provides no authority supporting its proposition that granting Enex's request for turnover relief would be excessive. Truth be told, the broad language in Enex's proposed turnover order is fully consistent with the Texas turnover statute, which does not require the identification of specific property subject to the turnover order. *See* TEX. CIV. PRAC. & REM. CODE §31.002(h) ("A court may enter or enforce an order . . . that requires the turnover of nonexempt property without identifying in the order the specific property subject to turnover."). Finally, although P3 contends that it "does not wish to imply that the Court should issue no relief at all," it is telling that P3 has failed to propose any alternative turnover order that might better reflect the narrow scope it desires. Dkt. 91 at 8. The language in Enex's proposed turnover order comes directly from the turnover order issued in *Dynamic Sports Nutrition*. *See* 2009 WL 10711815, at *6. As such, I find that the requested turnover relief is proper.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Turnover Relief (Dkt. 90) be **GRANTED**. No later than 10 calendar days after entry of the order adopting this Memorandum and Recommendation, P3 must turn over to the United States Marshals all of its tangible property and execute all documents necessary to effectuate the turn over to the United States Marshals of all right, title, and interest in its intangible

8

property, which, because of the status of the property, its location or its intangible nature, is not subject to ordinary process and execution. Once obtained, the United States Marshals shall conduct a judicial auction for the sale of the seized property as permitted by 28 U.S.C. § 2001 and 28 U.S.C. § 2004 and pay the proceeds to Enex in satisfaction of its judgment against P3.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 27th day of October 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE